William J. Trach
Direct Dial: (617) 880-4514
william.trach@lw.com

200 Clarendon Street
Boston, Massachusetts 02116
Tel: +1.617.948.6000  Fax: +1.617.948.6001
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

February 28, 2020

**VIA ECF**

The Honorable Nathaniel M. Gorton
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

Re:   *United States v. David Sidoo et al.*, No. 19-cr-10080

Dear Judge Gorton,

At yesterday's status conference, you stated unequivocally that this case would not be tried in the media—and that you expected everyone involved to abide by your orders and the Local Rules or face the consequences. Obviously, as the Local Rules state, extrajudicial comments can "interfere with a fair trial or otherwise prejudice the due administration of justice," L.R. 83.2.1(a). To that end, we write to draw the Court's attention to several articles from the last few days.

As our filings have alerted the Court, on Wednesday afternoon the Government disclosed highly exculpatory material to defense counsel that has been in its possession since October 2018. An ABC News article published that evening cites "a source familiar with the case" in describing what "[p]rosecutors believe" about the Government's belated disclosures, and quotes the source as saying that the Government "recently determined [the disclosures] w[ere] not privileged"—which is a fact that the Government has not even told defense counsel. And articles published in the Wall Street Journal and the Los Angeles Times over the past two days contain extensive quotes from interviews with Donald Heller, counsel to William "Rick" Singer—the Government's chief cooperating witness. Mr. Heller is quoted sharing his "impression" of the Government's disclosures, including his views on the legal issues raised by the disclosures and stating that the Government "never pressured his client to say anything untruthful" (which directly contradicts his own client's notes). Mr. Heller obviously does not have first-hand knowledge of the conversations his client had with the Government that are the subject of his client's notes, as he was not a participant. Why Mr. Heller believes it is in his client's interest to say that his client falsely wrote, in contemporaneous notes of his conversations with the Government, that he was in fact pressured to lie is unclear. What is clear, however, is that counsel for the Government's chief cooperating witness is not abiding by this Court's order or the Local Rules. Copies of the articles are enclosed.

These extrajudicial statements are impairing Defendants' right to a fair trial. And this would not be the first time that Defendants have been prejudiced by violations of Local Rule 83.2.1 in this case. *See Kaidi Yuan & Ashley Zhang, More USC Staff Accepted Bribes And Helped Admissions Scam, Feds Say*, LAist (Dec. 4, 2019),

**LATHAM&WATKINS**LLP

https://laist.com/2019/12/04/more_usc_staff_accepted_bribes_and_helped_admissions_scam_feds_say.php (including quotes from "Liz McCarthy, a spokesperson for the U.S. Attorney's office in Boston," with information about unnamed alleged co-conspirators); *Actress Lori Loughlin Likely to Face 'Higher Sentence' in College Admissions Scandal US Attorney Says*, WCVB5 (Oct. 8, 2019), https://www.wcvb.com/article/actress-lori-loughlin-likely-to-face-higher-sentence-in-college-admissions-scandal-us-attorney-says/29402556 (noting numerous extrajudicial statements by the United States Attorney about this case, including that the Government would "be asking for a substantial[]" sentence for Defendant Lori Loughlin if she does not plead guilty). Indeed, Judge Woodlock has already questioned the Government about its compliance with the Court's rule against prejudicial extrajudicial statements at the sentencing for a defendant in a related case. *See United States v. Bizzack* Sent'g Tr., ECF No. 693-7 at 45:10-46:8 (questioning Government counsel about statements about the "public dissemination, that is, a discussion of the possibilities of pleas of guilty to the offense charged or the possibility, for example, of enhanced sentences or enhanced charges"). And Mr. Heller's statements are entirely improper, particularly in light of his client's close ties to the Government and Mr. Heller's current status as an attorney associated with this case. *Cf. United States v. Singer*, No. 19-cr-10078-RWZ.

We write to express our concern regarding the effect that this continued conduct has on our clients' right to a fair and impartial trial in this matter. And we hope that the Court's admonishment at yesterday's conference will put an end to these attempts to prosecute our clients in the media rather than in the courtroom.

Sincerely yours,

*/s/ William. J. Trach*
William J. Trach
*Counsel for Defendants Mossimo Giannulli and Lori Loughlin*

Enclosures

*/s/ Brian T. Kelly*
Brian T. Kelly
*Counsel for Defendant Gamal Abdelaziz*

*/s/ David E. Meier*
David E. Meier

*/s/ Stephen S. Sutro*
Stephen S. Sutro
*Counsel for Defendants Diane and Todd Blake*

*/s/ Reuben Camper Cahn*
Reuben Camper Cahn
*Counsel for Defendant I-Hsin "Joey" Chen*

*/s/ David S. Schumacher*
David S. Schumacher
*Counsel for Defendants Amy and Gregory Colburn*

*/s/ Cory S. Flashner*
Cory S. Flashner
*Counsel for Defendant Elisabeth Kimmel*

*/s/ Tracy A. Miner*
Tracy A. Miner
*Counsel for Defendant Homayoun Zadeh*

Lori Loughlin's lawyers claim new evidence exonerates actress, fashion designer husband in admissions scandal - ABC News

Case 1:19-cr-10080-NMG   Document 900   Filed 02/28/20   Page 3 of 15

# Lori Loughlin's lawyers claim new evidence exonerates actress, fashion designer husband in admissions scandal

*The actress was wrapped up in the "Varsity Blues" college admissions scandal.*

By **Mark Osborne**, **Brian Hartman**, **Aaron Katersky** and **Kate Hodgson**
February 26, 2020, 10:20 PM • 6 min read

**Twist in college admissions scandal, defendant claims FBI told mastermind to lie**

*The legal team for actress Lori Loughlin and her husband claim that the FBI pressured the Varsity Blues alleged ring leader Rick Singer to lie, pointing to a message on his phone as evidence.*

Lori Loughlin's lawyers seized on the news Wednesday that "Varsity Blues" mastermind Rick Singer once complained that the FBI was making him lie to bolster the government's case, according to a new court document, proclaiming that it showed the actress was innocent of bribery charges.

In iPhone notes taken by Singer -- who pleaded guilty to racketeering and fraud in connection with the college admission scandal last year -- and shared between Singer and his defense attorney before he decided to cooperate with federal authorities, he claims the FBI wanted him "to tell a fib."

Singer relates a discussion with FBI agents to his lawyer, saying, "Loud and abrasive call with agents. They continue to ask me to tell a fib and not restate what I told my clients as to where there (sic) money was going -- to the program not the coach and that it was a donation and they want it to be a payment."

> MORE: Lori Loughlin, husband rejected 'legitimate approach' to get daughter into USC: Prosecutors

Loughlin's lawyers pointed to the new evidence that emerged Wednesday to say their client, and her fashion designer husband, are innocent of the charges filed against them in the "Varsity Blues" scandal.

Sean M. Berkowitz, the lawyer for the "Full House" actress and her husband, Mossimo Giannulli, asked to postpone the setting of a trial date until ongoing evidence disputes can be decided, according to the Wednesday filing.

"This afternoon, less than 24 hours before the status conference at which the Court intended to set trial dates in this mater, the Government for the very first time produced in discovery Brady information that is not only exculpatory, but exonerating for the Defendants the Government has charged with bribery," Berkowitz wrote in the filing. "That discovery consists of Rick Singer's written notes contemporaneously memorializing his discussions with FBI investigators about recorded phone calls that they directed him to make to his clients in order to induce inculpatory statements to be used against those clients in subsequent criminal prosecutions."

Lori Loughlin's lawyers claim new evidence exonerates actress, fashion designer daughter in admissions scandal - ABC News

Case 1:19-cr-10080-NMG   Document 900   Filed 02/28/20   Page 5 of 15



In this Feb. 28, 2019 file photo, actress Lori Loughlin poses with her daughter Olivia Jade Giannulli, left, at the 2019 "An Unforgettable Evening" in Beverly Hills, Calif.
Chris Pizzello/Invision/AP, File

"Singer's notes indicate that FBI agents yelled at him and instructed him to lie by saying that he told his clients who participated in the alleged 'side door' scheme that their payments were bribes, rather than legitimate donations that went to the schools," Berkowitz wrote in the filing.

Loughlin's defense has centered on the fact that she says she thought she was making proper donations to the University of Southern California instead of a bribe.

MORE: Lori Loughlin claims feds concealing evidence in 'Varsity Blues' college entrance scam

The message was set aside for review by a government taint team because it was initially flagged as subject to attorney-client privilege. When the taint team recently determined it was not privileged, the U.S. Attorney's Office released it to defense attorneys, according to a source familiar with the case.

While the message was disclosed to all defendants, the source said it applies only to one, unknown defendant.

Prosecutors believe the new information won't make a difference, according to a source, who said the notes were Singer's interpretation of his interaction with the FBI -- what the source called "a con man's interpretation."



In this April 3, 2019, file photo, actress Lori Loughlin, front, and her husband, clothing designer Mossimo Giannulli, left, depart federal court in Boston after facing charges in a nationwide college... more
Steven Senne/AP, File

Loughlin and Giannulli have been charged with conspiracy to commit mail fraud and honest services mail fraud, as well as conspiracy to commit money laundering. They have pleaded not guilty.

According to the indictment, Loughlin and Giannulli allegedly paid $500,000 in bribes to Singer in exchange for having their daughters, Olivia Jade and Isabella Rose Giannulli,

designated as recruits for USC's crew team even though neither had ever participated in the sport.

Michelle Janavs, whose family developed Hot Pockets before selling the company, was sentenced Tuesday to five months in prison for her role in the college admissions scandal.

*ABC News' Bill Hutchinson contributed to this report.*

College-Admissions Trials To Begin in October Even As Battle Brews Over New Evidence - WSJ

https://www.wsj.com/articles/college-admissions-trials-to-begin-in-october-even-as-battle-brews-over-new-evidence-11582828221

U.S.

# College-Admissions Trials to Begin in October, Even As Battle Brews Over New Evidence

The 15 parents will be tried in two groups, judge determines; second trial to be in January 2021



Actress Lori Loughlin left federal court last April in Boston.
PHOTO: PAUL MAROTTA/GETTY IMAGES

*By Melissa Korn and Jennifer Levitz*

Feb. 27, 2020 1:30 pm ET

BOSTON—A federal judge determined that the first trial for parents in the Varsity Blues college-admissions cheating case will begin in October, even as a side battle over newly disclosed evidence brews between lawyers for the government and for defendants.

U.S. District Judge Nathaniel Gorton said he expects each trial to last about a month. Actress Lori Loughlin and her husband, designer Mossimo Giannulli, will be in the first grouping. He set trial dates for October and January despite requests by defense attorneys to not begin trials for the 15 parents who have pleaded not guilty until at least early next year.

The trial timeline was set a day after the federal government handed over to defense lawyers 309 pages of notes the fraud scheme's ringleader, William "Rick" Singer, took on his iPhone while beginning his work as a government cooperator in fall 2018.

In motions Wednesday and Thursday, lawyers for some of the defendants argued that the government should have handed over the notes earlier, and that the notes show the Federal Bureau of Investigation encouraged Mr. Singer to lie to parents.

Lawyers for the parents are expected to use the disclosures as a basis to file motions to dismiss the indictment, to suppress evidence or for sanctions.

Mr. Singer called parents beginning that September, rehashing details of prior deals and finalizing ongoing ones. He has admitted to arranging to fraudulently boosting teens' test scores or having them flagged as recruited athletes, nearly guaranteeing their admission to certain colleges, and pleaded guilty to four felony charges.

Mr. Singer wrote on Oct. 2, 2018, of a "loud and abrasive call" with agents, in which "they continue to ask me to tell a fib" about where his clients' money was going. "It was a donation," he wrote, "and they want it to be a payment."

Judge Gorton ordered the parties to submit briefings on the import of the notes next month. He said the defense lawyers raised potentially "very serious Brady violations," referring to prosecutors' requirement to disclose potentially exculpatory evidence, "and charges of prosecutorial misconduct."

On Thursday, Assistant U.S. Attorney Eric Rosen said Mr. Singer's notes, taken very early in his cooperation, contain nothing that would exonerate his clients who have been criminally charged.

Prosecutors reiterated Thursday they didn't release the information earlier because they were concerned the notes, taken by Mr. Singer on his phone for his lawyer, were covered under attorney-client privilege. The lawyer waived privilege this week.

==Don Heller, Mr. Singer's lawyer, said the federal authorities on the case never pressured his client to say anything untruthful.==

In legal filings, lawyers for some of the parents argued that the new disclosures could exonerate their clients.

Parents generally paid Mr. Singer or his charity for his services, and some also wrote checks to the University of Southern California, directed to an account controlled by an athletic department administrator who has also been charged in the case.

The notes highlight one of the core arguments being made by defense lawyers: payments made to Mr. Singer, his charity and universities were donations and not bribes.

The government argues that the payments, often accompanied by phony athletic profiles used to sell children as athletic recruits for sports, were quid pro quos. A dozen of the 21 parents who

have pleaded guilty admitted to engaging in the illicit athletics-related deals.

==Mr. Heller said it doesn't matter whether the funds were called payments or donations, what matters is what they were intended to be. A former federal prosecutor, he said it's uncommon to even hear the word "bribe" used in dialogue in a criminal offense.==

=="Remember, this is a payment to guarantee the admission of a child to the school," Mr. Heller said, noting the agreement Mr. Singer had with parents was that the parents would pay a certain amount if the child was admitted. "That's a bribe."==

In his notes, Mr. Singer alluded to federal agents' particular focus on one parent, who only began working with the college counselor in June 2018. He commented that federal agents wanted to "nail Gordon at all costs," referring to Gordon Caplan, the former co-chairman of law firm Willkie Farr & Gallagher LLP. Mr. Caplan pleaded guilty in April to paying Mr. Singer $75,000 to have a proctor fix his daughter's ACT score, and was sentenced in October to one month in prison.

**Write to** Melissa Korn at melissa.korn@wsj.com and Jennifer Levitz at jennifer.levitz@wsj.com

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

ADMISSIONS SCANDAL: Notes raise questions about Lori Loughlin 'bribe' - Los Angeles Times

College admissions scandal: Notes raise questions about Lori Loughlin 'bribe'



William "Rick" Singer leaves federal court in Boston after being charged with racketeering conspiracy, money laundering conspiracy, conspiracy to defraud the United States and obstruction of justice on March 12, 2019. (Scott Eisen / Getty Images)

By MATTHEW ORMSETH
STAFF WRITER

FEB. 27, 2020
4:53 PM

    

In October 2018, two weeks after he was arrested by the FBI, William "Rick" Singer pulled out his iPhone and wrote a note in it about a "loud and abrasive call" with his handlers.

"They continue to ask me to tell a fib," he wrote, "and not restate what I told my clients as to where [their] money was going — to the program not the coach and that it was a donation and they want it to be a payment."

Thursday made for an eventful day in a college admissions scandal that has riveted the nation: A judge set an Oct. 5 start date for a blockbuster trial featuring Lori Loughlin and other parents charged with defrauding USC, and notes emerged showing Singer had written that his FBI handlers wanted him "to bend the truth" and tell his clients that payments they made to his charity were bribes, not donations to university athletic programs.

At the heart of the case is this question: Did Singer's clients believe their payments were bribes that would induce college coaches and officials to accept their underqualified children, swindling the schools of their employees' honest employment? Or did they think the payments were genuine donations, routed through proper channels and no different from the checks deep-pocketed parents often write to universities they hope to see their children attend?

It is a question that probably must be settled at trial, which U.S. District Judge Nathaniel M. Gorton on Thursday scheduled to begin in October, with Loughlin, her husband, J. Mossimo Giannulli, and others charged with defrauding USC.

In his iPhone notes, which prosecutors disclosed to defense attorneys on Wednesday, Singer wrote that his handlers insisted he "tell a fib and not restate" what he had previously told his clients: that their money was destined for a school's athletic program, not the coach personally, "and that it was a donation."

"Essentially," Singer wrote, "they are asking me to bend the truth which is what they asked me not to do when working with the agents and Eric Rosen," the case's lead prosecutor.

Jack Pirozzolo, who represents William McGlashan Jr., a San Francisco Bay Area financier who is among the other parents charged in the case, seized on Singer's notes in court papers filed Thursday, saying they show prosecutors and agents told Singer to "manufacture evidence" that would support a bribery case "when no such case existed." A spokeswoman for the U.S. attorney's office in Boston declined to comment.

When Singer noted in his iPhone that he had been told to "not restate" that his clients' money was bound for university programs, not coaches' pockets, it appears he was recording an instruction to more narrowly focus his conversations with clients who were under investigation, his attorney, Don Heller, said in an interview.

"My impression is they wanted to get something specific, rather than have Rick's conversations range all over the place, as they can do, and miss the point," Heller said. "Rick's a talker."

Singer was instructed to use two iPhones while cooperating with government agents, Heller said. He used one phone, which agents had wiretapped for several months prior to him becoming a cooperator, to communicate with his handlers and call targets of the investigation on a recorded line, Heller said. Singer was supposed to use the other phone to communicate with his lawyer.

Singer, however, was using the phone designated for government work to write notes and email them to his attorney, Heller said. A member of the prosecution team first saw one of the notes in late October 2018, Rosen told defense attorneys in a letter dated Wednesday. When prosecutors learned of Singer's writings, they believed the records were communications to Singer's attorney and therefore privileged, Heller said. "That perception was a correct perception," he said.

A "taint team" of government lawyers was brought in to review the notes and determine whether they were protected by attorney-client privilege. The review began in August, Rosen wrote in his letter. After some delays in parsing through the notes, prosecutors decided last week they should be disclosed, Heller said.

Sean Berkowitz, who represents Loughlin and Giannulli, called this timeline "incredible on its face." It strains belief, he wrote, to think that "on learning that the supposed mastermind at the center of a vast conspiracy involving dozens of university officials

and public figures keeps notes of his daily interactions on his phone," agents and prosecutors "responded by *not* reviewing these notes for evidence."

Their disclosure, 16 months after a member of the prosecution team first saw one of them, shows the government has adopted a "win at all costs effort," Berkowitz wrote, "rather than following their obligation to do justice."

Berkowitz asked a judge to force the U.S. attorney's office in Boston to turn over every FBI report of Singer's interviews. He also requested a hearing to determine how the prosecution team learned of Singer's iPhone notes, why they were withheld and whether the government is holding back any other evidence.

Despite his characterization of a call with his handler as "loud and abrasive," Singer was never coerced or pressured to continue cooperating, his lawyer said, and every phone call he placed at an agent's direction was consensual. Defense attorneys can squabble over whether their clients did or didn't use the word "bribe," Heller said, but a payment can still be an illegal quid pro quo, even if the payer calls it a "donation."

"It doesn't require the parties to say, 'I'll bribe you 'x' dollars in exchange for 'y' and 'z,'" he said. "It's a wink and a nod. It's 'This is what it's worth to me.' And that's how bribery cases have unfolded throughout the annals of history."

In light of the iPhone note disclosures, Gorton, the judge, said Thursday that defense attorneys have until March 13 to file motions to dismiss the indictment, suppress evidence or seek sanctions for government misconduct.

Gorton on Thursday divided the 15 parents who have pleaded not guilty into two trial groups: the first, slated to begin Oct. 5, includes Loughlin and Giannulli, along with Robert Zangrillo, a Miami investor; John Wilson, a Massachusetts financier; Homayoun Zadeh, a USC dentistry professor; Gamal Abdelaziz, a casino executive; and Diane and Todd Blake, a Bay Area couple.

The second trial, scheduled to begin Jan. 11, includes McGlashan, a former private equity chief; David Sidoo, a Canadian investor and former professional football player; I-Hsin "Joey" Chen, who owns a shipping company in Torrance; Elizabeth Kimmel, a media executive; Marci Palatella, chief executive of a liquor company; and Palo Alto oncologist Gregory Colburn and his wife, Amy.

**CALIFORNIA**



**The stories shaping California**
Get up to speed with our Essential California newsletter, sent six days a week.

Enter Email Address

**SIGN ME UP**

**You may occasionally receive promotional content from the Los Angeles Times.**



Matthew Ormseth

Twitter

Instagram

Email

Facebook

Matthew Ormseth is a reporter for the Los Angeles Times. Before joining The Times in 2018, he covered city news and state politics at the Hartford Courant. He grew up in Arcadia and graduated from Cornell University.

**CERTIFICATE OF SERVICE**

I certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and that paper copies will be sent on February 28, 2020, to those identified as non-registered participants.

*/s/ William J. Trach*
William J. Trach