# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

Homayoun Zadeh,

     Defendant.

Case No. 1:19-cr-10080-NMG

## DEFENDANT HOMAYOUN ZADEH'S
## SENTENCING MEMORANDUM

Defendant Homayoun Zadeh pulled himself up by his bootstraps from a financially precarious childhood in Iran to become a highly regarded periodontist and USC professor. Unlike the other parents in these series of cases, Dr. Zadeh did not plead to federal programs bribery or mail fraud, but rather to one count of filing a false tax return. He deeply regrets his actions and stands before the Court a humbled man. Dr. Zadeh entered into a plea agreement under Rule 11(c)(1)(C) and the parties agreed to recommend a guidelines sentence of incarceration for a period of six weeks, a fine of $20,000, one year of supervised release with a condition requiring that he perform 250 hours of community service, restitution in the amount of $8,414, and a special assessment of $100. Dr. Zadeh submits this memorandum in support of the parties' recommended sentence, which is sufficient but no greater than necessary to effectuate the goals of 18 U.S.C. § 3553(a).

## I.      History and Characteristics of Dr. Homa Zadeh

Before his arrest in this case Dr. Zadeh embodied the American dream, overcoming the early death of his father to become an internationally respected periodontist. He grew up in his birth country of Iran in the years leading up to the Iranian Revolution. PSR ¶ 101. Dr. Zadeh's

father died when he was only 11 years old.  PSR ¶ 103.  His older brother took over their father's business but Dr. Zadeh and his six siblings nevertheless struggled to make ends meet.  PSR ¶ 103.

Dr. Zadeh joined his brother in the United States at the age of 16.  PSR ¶ 103.  He worked his way through school and became a dual US-Iranian citizen.  PSR ¶¶ 101, 103.  He ultimately graduated from UCLA and earned a Doctor of Dental Surgery at the USC School of Dentistry.  PSR ¶ 124.  Dr. Zadeh also earned a Ph.D. in Biomedical Science: Immunology at the University of Connecticut, where he performed a clinical residency in Periodontology.  PSR ¶ 124.

Dr. Zadeh is committed to improving the field of dentistry.  He has been a teacher and mentor to countless dental students and has volunteered his time to provide dental services at clinics to those who otherwise would not be able to have the services they need.  He conducts dental research and holds patents on dental instruments and products he developed.  PSR ¶ 127.  He also owns the Vista Institute for Therapeutic Innovations in Woodland Hills, California, an educational institute through which he teaches continuing education courses to dentists internationally.  PSR ¶ 126.  Dr. Zadeh also runs two dental practices where he works as a periodontist, although those practices were temporarily closed during the COVID-19 pandemic.  PSR ¶¶ 128-30.

Dr. Zadeh has been affiliated with the University of Southern California (where he earned his DDS) for decades.  Before his arrest Dr. Zadeh was a tenured Associate Professor and Director of Periodontology for the post-doctoral program at the USC School of Dentistry.  PSR ¶ 131.  He was on the faculty at USC from 1993 until March 2019, when he was required to take an unpaid leave of absence after his arrest.  PSR ¶ 131.  Dr. Zadeh had previously donated to

USC even before the conduct at issue here, including a $30,000 donation to the USC Periodontal Improvement Fund at the Ostrow School of Dentistry in 2015.  PSR ¶ 43.

## II.      Nature of the Offense

Dr. Zadeh pled guilty to one count of filing a false tax return under 26 U.S.C. § 7206(1) in connection with his false representation on his 2017 tax return that a $40,000 payment to Key Worldwide Foundation ("KWF"), Rick Singer's non-profit organization, was a charitable contribution.  Dr. Zadeh takes full responsibility for his offense.  Dr. Zadeh agreed to pay $100,000 to facilitate his daughter's admission to USC by having Singer's contacts who would advocate for her admission get credit for his donation to the school.  PSR ¶ 42.  Dr. Zadeh made periodic payments totaling $65,000 before his arrest, at least $50,000 of which went to USC. PSR ¶ 42.  He deducted $40,000 of these payments as charitable contributions on his 2017 IRS Form 1040.  PSR ¶¶ 42, 68.  By pleading guilty, Dr. Zadeh acknowledges that he falsely represented that the payments to KWF were charitable contributions for which he did not receive any services.  Those payments were in fact made in exchange for facilitating the admission of Dr. Zadeh's daughter to USC.  Dr. Zadeh's false representation inflated his tax refund for 2017 by $8,414.  PSR ¶ 73.

Dr. Zadeh first worked with Rick Singer in July 2015.  At that time Rick Singer contributed $25,000 to USC to help fund a service trip to Cambodia for dental students, although the trip was ultimately cancelled for unrelated reasons.  PSR ¶ 44.  The following year Dr. Zadeh hired Singer's company to assist his daughter with her college applications on the recommendation of a colleague in the School of Dentistry.  Dr. Zadeh's daughter applied to USC and submitted a truthful application, with no mention of lacrosse.  PSR ¶ 46.  Unknown to Dr. Zadeh, Mr. Singer submitted a fake lacrosse profile for Dr. Zadeh's daughter to Donna Heinel

(the Senior Women's Administrator at USC).[1]  Ms. Heinel presented Dr. Zadeh's daughter to the USC subcommittee for athletic admissions which approved her admission to USC as a lacrosse recruit.  PSR ¶ 52.  The next day Mr. Singer directed his bookkeeper to send $50,000 from KWF to USC Women's Athletics care of Donna Heinel.  PSR ¶ 52.

## III.    Sentencing Guidelines

With a tax loss of $8,414, Dr. Zadeh's base offense level is 10 under U.S.S.G. § 2T4.1(C).  PSR ¶ 83.  His offense level is reduced by two because Dr. Zadeh accepted responsibility for his offense.  *See* U.S.S.G. § 3E1.1(a), PSR ¶ 90.  Dr. Zadeh's total offense level is therefore 8.  PSR ¶ 91.  With a criminal history category of I, the guidelines recommend that Dr. Zadeh be sentenced to 0 to 6 months' incarceration, 1 year supervised release, and a fine between $2,000 to $20,000.  PSR ¶¶ 96, 143, 147, 153.

Dr. Zadeh entered into a C plea with a recommended sentence of incarceration for a period of six weeks, a fine of $20,000, one year of supervised release with a condition requiring that he perform 250 hours of community service, restitution in the amount of $8,414, and a special assessment of $100.  The sentence recommended by the parties falls squarely within the sentencing guidelines, including a period of incarceration and a fine at the top of the guidelines range.

## IV.    Need for the Sentence Imposed

The proposed guidelines sentence is sufficient to convey the seriousness of Dr. Zadeh's crime.  Any sentence of incarceration in a federal prison is a serious sentence.  And the sentence

---

[1] Although a text from Rick Singer to Dr. Zadeh mentioned "a profile", Dr. Zadeh did not provide any information or a picture of his daughter as a Lacrosse player.  Rather, Singer created the profile using information his organization made up and a photo of someone else that they obtained.  Singer never sent a copy of the profile, in draft or in final form, to Dr. Zadeh.

this Court imposes will not be the only punishment Dr. Zadeh suffers for his crime. Dr. Zadeh has suffered significant professional and reputational consequences as a result of his arrest and guilty plea. This case has garnered national publicity and is well-known to Dr. Zadeh's family, friends, colleagues, and even his daughter's classmates. PSR ¶ 114. His dental practices have suffered. PSR ¶ 130. Dr. Zadeh has been on unpaid leave from USC since shortly after his arrest. PSR ¶ 131. He has been told he must resign his faculty position or he will be terminated. PSR ¶ 131. Dr. Zadeh has also been terminated from professional meetings, organizations, and fellowships. PSR ¶¶ 120, 131.

The proposed sentence is also sufficient to deter Dr. Zadeh and others in his position. There is no risk that Dr. Zadeh will reoffend in light of his age , his character and his lack of criminal history. He is deeply ashamed of his conduct here, which is the first time he has been charged with a criminal offense. The sentence, coupled with the extensive publicity surrounding this case, will ensure that others considering a similar crime will think twice.

## V.    Need to Avoid Unwarranted Disparities

Finally, the proposed sentence is appropriate to avoid unwarranted sentencing disparities. Indeed, some defendants who paid substantially higher amounts have received comparable sentences from this Court. Diane Blake, who together with her husband paid $250,000 to obtain their daughter's admission to USC, was sentenced to six weeks' incarceration. *See* Fourth Superseding Indictment ¶ 123; Docket No. 1620. Her husband Todd Blake was sentenced to four months' incarceration. *See* Fourth Superseding Indictment ¶ 123; Docket No. 1621. Lori Loughlin and her husband paid $500,000 to obtain two daughters' admission to USC. Ms. Loughlin was sentenced to two months' incarceration.

The proposed sentence is also consistent with other sentences of individuals convicted of similar as well as more serious tax and reporting crimes. For example, in U.S. v. Poilluci, 18-

CR-10238 (Judge O'Toole), the defendant received a probationary sentence for a tax loss of approximately $215,552.  In U.S. v. Rapoza, 18-CR-10316 (Judge Stearns), the defendant received a probationary sentence for a tax loss of $327,282.  In U.S. v. Quinn, 21-CR-10117, Judge Woodlock gave the defendants probationary sentences for falsifying pension reports, resulting in a loss of over $337,000.

When viewed against the cases known as Varsity Blues and cases for similar offenses for which Dr. Zadeh is being sentenced, the proposed sentence does not create any unwarranted disparities.

## CONCLUSION

For the foregoing reasons Dr. Homayoun Zadeh submits that the parties' joint recommendation of a guidelines sentence of six weeks' incarceration, a $20,000 fine, one year of supervised release, 250 hours of community service, $8,414 in restitution, and a special assessment of $100 is sufficient but no greater than necessary to effectuate the purposes of 18 U.S.C. § 3553(a).

Dated: November 2, 2021    Respectfully submitted,

         HOMAYOUN ZADEH

         By his attorneys,

         */s/ Tracy A. Miner*
         Tracy A. Miner (BBO No. 547137)
         Megan A. Siddall (BBO No. 568979)
         Miner Siddall LLP
         101 Federal Street, Suite 650
         Boston, MA 02110
         Tel.: (617) 202-5890
         Fax: (617) 202-5893
         tminer@msdefenders.com
         msiddall@msdefenders.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served by ECF on counsel for the Government on November 2, 2021.

*/s/ Tracy A. Miner*
Tracy A. Miner
